IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Robert Peoples, #270600 ) | |
| ) | Civil Action No. 8:08-252-CMC-BHH |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Sgt. Leon Davis, et.al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a prisoner proceeding *pro se*, brought this action alleging constitutional violations pursuant to 42 U.S.C. § 1983. The matter is before the Court on the defendants' motion for summary judgment. [Doc. 27.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on January 29, 2008, seeking damages for alleged civil rights violations. The plaintiff contends that he was restrained using a "black box" behind his back for 7 hours, which caused him constitutionally prohibited levels of pain and injury in violation of his 8th and 14th Amendment rights. The plaintiff also claims that during the same period of time, he was not permitted to use the bathroom. He also contends that the defendants were deliberately indifferent to injuries allegedly

suffered as a result of these described incidents and, further, that they have failed to timely file grievances.

The relevant facts of this case are considered in the context of the Court's analysis below.

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### I. Excessive Force Claim

The plaintiff makes an Eighth Amendment claim that the defendants used excessive force against him when they restrained him using a "black box"[1] behind his back during a 7-hour, round-trip transport. The plaintiff also contends that he was subjected to cruel and unusual punishment when he was not permitted to use the bathroom during that same period of time.

---

[1] "A 'black box' is a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs which make it more difficult for a prisoner to tamper with his handcuffs. A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hands, restrained by handcuffs and the black box, are pulled against his stomach." *Weber v. Gathers*, 2006 WL 2796383, at *4 n.3 (D.S.C. 2006)(unpublished).

To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The objective component requires the inmate to prove that the use of force was more than *de minimis* or, in the alternative, that it was repugnant to the conscience of mankind. *Id*. at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994).

On this record, the Court finds evidence that the plaintiff has failed to create issues of fact as to the subjective element of his claim.

The plaintiff contends that during transport on May 7, 2007, for approximately 7 hours, he was restrained from behind with the black box. (Pl. Aff. ¶ 6, 15.) The plaintiff was being transported for an appearance in one of his pending state court cases. The plaintiff alleges that when the defendant officers began preparing him for transport, he explained to them that he had been previously injured by use of the black box behind his back on April 4, 2007. (Pl. Aff. ¶ 8-9.) The plaintiff contends that defendant Manigult, who was present on May 7, was also present on the day he had been previously

4

diagnosed for such alleged injuries. (Pl. Aff. ¶ 8.) The plaintiff claims that he pled with Manigult to verify these prior injuries, but Manigult declined. *Id.*

The plaintiff alleges that he was thereafter placed into the transportation van where he was secured tightly with a seat belt. *Id.* ¶ 10. The plaintiff complains that the abnormally tight seat belt forced all of his body weight against his wrists which caused unnecessary and wanton pain. *Id.*

### A.     Subjective Component of Take Down Claim

To prove the subjective component of his claim, the plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (internal quotations and citation omitted).

In *Whitley*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotations omitted) (applying these factors

in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the *Whitley* standard "to all allegations of excessive force").

### *1.     Need for the application of the force*

The defendants have put forward evidence that restraining an inmate with the black box behind his back provides an additional measure of security when used in conjunction with handcuffs. Under the South Carolina Department of Corrections' transportation policy, inmates with Special Management Unit ("SMU") status, such as the plaintiff, must be transported using a key system, which includes keyed handcuffs and a keyed black box. (Davis Aff. ¶ 2.)  There is no requirement for paperwork or other official written order to be in place for an inmate to be secured for transport based on his security status. *Id*.

Moreover, the defendants have come forward with evidence that the plaintiff is a special security risk. *Id*. ¶ 7.  Shortly after transferring to Lieber in December of 2005, the plaintiff was found during a transport to have a shank hidden in his shoe. *Id*.  Without the black box being secured from behind, the plaintiff has been known to "tamper with the lock on the cuffs, often with paperclips he has hidden in his own skin, and attempt to get out of them." *Id*. The defendants have produced evidence that the plaintiff has "also known to fondle himself during transport if restrained from the front." *Id*.

For all of the above reasons, the defendants contend that restraining the plaintiff behind his back with the black box is justified.

>   *2.     The relationship between the need and the amount of force that was used*

To the Court, the use of the restraints was proportional to the need to reduce the security risk posed by the plaintiff. It is undisputed in the record that all SMU inmates are transported while restrained with the black box. (Davis Aff. ¶ 2.) Accordingly, there was nothing unusual about its use on the plaintiff. He concedes as much. (Pl. Aff. ¶ 30.) As to the propriety of restraining him behind his back, the defendants have put forward evidence that the plaintiff had a disciplinary and behavioral history which would have justified the defendant officers in believing that so restraining him was necessary. (Davis Aff. ¶ 7.)

Of course the plaintiff disputes these allegations to varying degrees. But, the plaintiff does not dispute that a shank was, in fact, found in his shoe and only claims that he has never been *charged* with lock tampering or fondling himself. (Pl. Aff. ¶¶ 27, 31.) A failure to be charged with such behavior is not evidence that the behavior has not occurred or that the defendants did not truly believe that the behavior had occurred in the past.

The plaintiff also complains that the defendants should have considered prior injuries suffered, by virtue of having been similarly restrained, in making their decision to again use the black box behind his back. It is undisputed, however, that the plaintiff was not suffering any particular injury at the time of the incident in question. Rather, he claims that he had suffered injuries a month earlier from having been similarly restrained in a similar fashion and that based on those prior injuries, the defendant officers should have been on notice that he would be injured again. (Pl. Mem. Opp. Summ. J. at 48, ¶ 15.)

It is true that the plaintiff was seen on April 4, 2007. The medical records from that date indicate that he complained about "handcuffs" and "numbness in his LT arm." (Pl. Ex. 15.) The record states, "Mild numbness on dorsum of dorsum of LT arm." *Id*.

The Court cannot imagine how this evidence transforms the actions of the defendant officers, a month later, into constitutional violations. First, the medical record says nothing about the type of restraint the plaintiff was placed in or the circumstances of the alleged injuries. There is nothing about this evidence that would put the defendants on notice that if the plaintiff was again similarly restrained, he would suffer comparable injuries. Second, the injuries were suffered over a month before the May 7 incident. There is no evidence that the plaintiff suffered any continuing injury that should have been considered in deciding whether or not to use the black box behind his back.

The facts of this case are to be distinguished from those alleged in a companion case filed by the plaintiff, *Peoples v. Davis*, 8:08-cv-251-CMC-BHH. In that case the plaintiff alleges that in spite of evidence that the plaintiff was, in fact, injured and in agonizing pain, as a result of his transportation on the day at issue in this case, May 7, that he was again transported on the following day, May 8, with his arms behind his back. There, issues of fact remain as to whether the defendant officers sadistically required the restraint even though a reasonable jury might find that the plaintiff was unequivocally in no physical condition to bear it. Those are not the facts here.

The plaintiff has not alleged that he suffered any injuries as of May 7, which prohibited him from being restrained in the manner in which he was. The defendants had legitimate penological reasons for using the manner of restraint employed. And,

8

injuries suffered over a month before under circumstances not fully known or comparable could not have been relevant to the decision made. Even had the defendants known that the plaintiff had been injured as a result of restraints used on some other occasion, that does not make their use definitively unconstitutional. No reasonable jury could conclude that the decision to use the black box restraint was anything other than a good-faith attempt to maintain security and discipline.

The only remaining concern for the Court is the length of time of the restraint. Restraints which cause an "unnecessary infliction of continued pain throughout a prolonged time period" can support "an inference that the guards were acting to punish, rather than to quell the disturbance." *Williams v. Benjamin,* 77 F.3d 756 (4th Cir. 1996) (citing *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir.1990) ("[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective.")). The Fourth Circuit, however, has rejected that even placement of an inmate in an isolation cell for two days wearing only underwear and in a three-point restraint did not constitute force "repugnant to the conscience of mankind." *See Jackson v. Morgan*, 19 Fed. Appx. 97, 101 (4th Cir. 2001).

Seven hours in the black box restraint, notwithstanding the certain discomfort of it all, therefore, cannot qualify. The need for the restraint did not abate during the seven hour period, during which he was being transported. By policy and by the plaintiff's particular inmate history, the restraints were justified during transportation. While it is true that the need for force and the immediacy of any threat here were arguably less than in *Jackson*, so was the severity of the force used here also proportionally and appropriately less.

> 3. *The extent of any reasonably perceived threat that the application of force was intended to quell.*

There is no evidence of any exigent threat which the plaintiff posed either to himself or others. In other words, at the time the restraints were applied, he was not resisting physically. The Court thinks this consideration is minimally relevant in light of the other penological justifications for so restraining the plaintiff, as described above. The defendants have explained their justification and it should be given some deference.

It is well established that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 5 (quotations and citations omitted). In this case, the evidence speaks of no other conclusion than the plaintiff was restrained in a "good-faith effort to maintain . . . discipline" and security. *Iko*, 535 F.3d at 238.

The plaintiff also contends that he was not permitted to use the restroom during the entire duration of the trip, even while the officers themselves were using the bathroom. Actions "totally without penological justification" can constitute "unnecessary and wanton inflictions of pain. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quotations omitted). Under certain circumstances, therefore, denial of bathroom breaks could reasonably be perceived as wanting for any legitimate penological justification. *Id*. at 738. And, in this case, as far as the Court can tell, the defendants have offered no justification.

The plaintiff, however, has not produced any evidence which would satisfy the objective element of his claim that he suffered more than *de minimis* harm. He does not

claim to have had to relieve himself while in his clothes and he alleges no damages from having to wait so long to go to the bathroom. The allegations, if true, are distasteful but not constitutionally actionable.

It is true that there may be "highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain." *Norman*, 25 F.3d at 1264. A refusal to allow him to use the bathroom, however, in the absence of any humiliating or injurious consequence, cannot be interpreted as "repugnant to the conscience of mankind." *Id*. If the plaintiff had urinated on himself, for example, then basic issues of human "dignity" would absolutely have been implicated. See *Hope*, 536 U.S. at 738. Those are not the facts here.

The Court's decision, however, is in no way an endorsement of any decision by the defendant officers to disallow the plaintiff to use the bathroom in the absence of some legitimate justification. Such conduct is unacceptable even if not actionable.

## II.   Deliberate Indifference to Medical Needs Claim

The plaintiff also contends that the defendants were deliberately indifferent to serious medical needs suffered from having been restrained, as described, for 7 hours.

It is rudimentary that the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id*. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth

11

Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id*. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

It is indisputable, however, that the plaintiff was seen on May 7 for his alleged injuries. In fact, the plaintiff expressly admits in his companion case, that he was seen, on May 7, the day in question, and given a sling for his arm and ibuprofen. *See Peoples v. Davis*, 8:08-cv-251-CMC-BHH [Doc. 42, Pl. Aff. ¶ 3, 4; Doc. 32, Powell Aff., Ex. A.] That treatment, in fact, forms a significant basis for his claim in that case. He should be estopped from contending otherwise, here.

12

To the extent he would still contend that the May 7 examination was less than what is constitutionally required, he has made no effort to explain how it was deficient. He has not alleged any treatment he needed but was denied.

### III.     Due Process Claim

Lastly, the plaintiff appears to claim that the defendants have not timely processed his grievances in violation of the due process clause of the United States Constitution. The defendants concede that some of the plaintiff's grievances have not been processed in the time prescribed by SCDC policy.  Such a failure, however, is not sufficient to hold an official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure.  *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977).  Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure");  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983 ); *see also Doans v. Rice*, 1987 WL 38813, at *1 (4th Cir. 1987) (unpublished).  Thus, even if the defendants failed to timely respond to, or process the plaintiff's grievances, the plaintiff has not stated a constitutional claim.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the defendants' Motion for Summary Judgment [Doc. 27] be GRANTED and the plaintiff's case dismissed *with prejudice*.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 23, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).